UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                              Plaintiff-Applicant,<br><br>           -v-<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                              Defendant. | Adv. Pro. No. 08-1789 (CGM)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                              Debtor. | |
| TENSYR LIMITED,<br><br>                              Appellant-Defendant,<br><br>           -v-<br><br>IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, and the Chapter 7 Estate of Bernard L. Madoff,<br><br>                              Appellee-Plaintiff. | 24 Civ. 24 (PAE)<br><br><u>OPINION AND ORDER</u> |

PAUL A. ENGELMAYER, District Judge:

Appellant-Defendant Tensyr Limited ("Tensyr"), a limited company incorporated in the

Bailiwick of Jersey, seeks leave here to appeal an interlocutory order from the Bankruptcy Court

denying Tensyr's motion to dismiss, for lack of personal jurisdiction, the case brought against it

by Appellee-Plaintiff Irving H. Picard (the "Trustee"). *See* Dkt. 3 ("Tensyr Mot.") at 4, 9–11.

Measured against the governing standards, however, there is nothing in the Bankruptcy Court's ruling that justifies the disruption and delay that Tensyr's proposed interlocutory appeal would work. The Court denies Tensyr's motion.

## I.    Background

"This case is one of many that have arisen from Bernard Madoff's Ponzi scheme, which has been 'well documented across many pages of Federal Reporters.'" *In re Bernard L. Madoff Inv. Secs. LLC*, No. 22 Civ. 8741 (GHW), 2023 WL 3293648, at *1 (S.D.N.Y. May 5, 2023) ("*PIFSS*") (quoting *In re Bernard L. Madoff Inv. Secs., LLC*, 976 F.3d 184, 188 (2d Cir. 2020)); *see also In re Bernard L. Madoff Inv. Secs., LLC*, 605 B.R. 570, 574–75 (S.D.N.Y. 2019) ("The infamous multibillion-dollar Madoff Ponzi scheme has been chronicled in numerous decisions in this Circuit.") (collecting cases).  After the collapse of Madoff's misbegotten enterprise, Bernard L. Madoff Investment Securities LLC ("BLMIS"), Picard was appointed Trustee pursuant to the Securities Investor Protection Act ("SIPA"), to liquidate Madoff's fund. *See In re BLMIS*, 976 F.3d at 189.  In this role, the Trustee has set out to recover "certain funds that would have been customer property had BLMIS not transferred them to others." *Id.*

In the Bankruptcy Court proceeding from which this appeal arises, the Trustee seeks to claw back approximately $35 million of what he maintains is BLMIS customer property that Tensyr received in "subsequent transfers" from a BLMIS "feeder fund" known as Fairfield Sentry Limited ("Sentry").  Dkt. 6 ("Trustee Opp.") at 2.  In April 2023, Tensyr moved to dismiss the Trustee's Amended Complaint.  Citing Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Tensyr argued, *inter alia*, that the Bankruptcy Court lacked personal jurisdiction over Tensyr as a foreign corporation and that the Trustee had failed to adequately allege that Tensyr had received, within the meaning of SIPA, subsequent transfers of BLMIS customer property. *See* Tensyr Mot., Ex. B ("Bankruptcy Op.") at 5.

On November 3, 2023, the Bankruptcy Court (Morris, B.J.) issued a decision denying Tensyr's motions in their entirety. *Id.* at 2. With respect to the 12(b)(2) motion, it noted that, before discovery, the Trustee could make the required *prima facie* showing of personal jurisdiction by "pleading in good faith, legally sufficient allegations of jurisdiction." *Id.* at 6 (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84–85 (2d Cir. 2013)). The Trustee's Amended Complaint had done so, the Bankruptcy Court held, by pleading that Tensyr had "invested in Fairfield Sentry knowing and intending that their investments would be investments with New York-based BLMIS," and that Tensyr "intended that the funds they invested in Fairfield Sentry would be used to purchase securities in the United States through New York-based BLMIS." *Id.* Based on these and other allegations to the effect that Tensyr knew and intended that investments and redemption requests it made with or to Fairfield Sentry were in sum and substance dealings with New York-based BLMIS, the Court found the Amended Complaint to adequately allege sufficient minimum contacts with the forum state, and that the suit arose out of these minimum contacts. *Id.* at 6–11. The Court further found that an exercise of personal jurisdiction would be reasonable. *Id.* at 12–13. Finding an adequate pleading of a *prima facie* case of personal jurisdiction, it thus denied that aspect of Tensyr's motion to dismiss under Rule 12(b)(2).

The Bankruptcy Court also rejected Tensyr's argument that *PIFSS*, No. 22 Civ. 8741 (S.D.N.Y. Sept. 20, 2023) was controlling. *Id.* at 13–14 (citing *PIFSS*, 2023 WL 6143985). In *PIFSS*, Judge Woods found inapplicable the "direct effects" exception to foreign sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA"), requiring dismissal of the Trustee's claim. The Bankruptcy Court acknowledged that the direct effects doctrine under the FSIA—which implicates subject matter jurisdiction—and personal jurisdiction are "interrelated."

*See Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 759 (2d Cir. 1998). But, it held, the direct effects doctrine did not control this case, including because Tensyr is not a foreign sovereign and the FSIA does not apply to it. Bankruptcy Op. at 13–17.

The Bankruptcy Court then considered—and denied—Tensyr's motion to dismiss under Rule 12(b)(6). *Id.* at 18–37. Relevant here, it found that the Trustee had adequately pled a "subsequent transfer claim" as to Tensyr, because the Amended Complaint had "plausibly alleged [Tensyr] received BLMIS customer property." *Id.* at 31–32.

On January 3, 2024, Tensyr filed a notice of appeal with this Court, Dkt. 1, and a motion for leave to appeal. Dkt. 3. On January 19, 2024, the Trustee filed a memorandum in opposition to the motion for leave to appeal. Dkt. 6. On February 2, 2024, Tensyr filed a reply. Dkt. 7 ("Tensyr Reply").

## II.    Applicable Legal Standards

This Court has jurisdiction over appeals "from final judgments, orders, and decrees" of the bankruptcy courts. 28 U.S.C. § 158(a)(1). However, parties wishing to appeal interlocutory orders—such as the one at issue here—must first seek and be granted leave of this Court. *Id.* § 158(a)(3); *see also Rein*, 162 F.3d at 755–56. The statutory provision giving district courts discretionary jurisdiction over such interlocutory appeals of bankruptcy court orders does not set a standard governing when to grant leave for such an appeal. *See generally* 28 U.S.C. § 158. Courts in this Circuit have applied the test set by 28 U.S.C. § 1292(b), which governs interlocutory appeals of district court orders to a United States Court of Appeals. *See In re BLMIS*, No. 22 Civ. 6561 (LGS), 2023 WL 395225, at *1 (S.D.N.Y. Jan. 25, 2023) (citing *In re Empire Generating Co., LLC*, No. 19 Civ. 5744 (CS), 2020 WL 1330285, at *4 (S.D.N.Y. Mar. 23, 2020)). It provides that leave to file an interlocutory appeal should be granted only where (1) the appeal "involves a controlling question of law," (2) "as to which there is substantial

ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Under the first prong of this test, a "'question of law' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *In re Worldcom, Inc.*, No. M-47 HB, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003) (quoting *Ahrenholz v. Bd. of Trs. of Univ. of Illinois*, 219 F.3d 674, 676–77 (7th Cir. 2000)). "Questions regarding application of the appropriate law to the relevant facts are generally not suitable for" interlocutory appellate review. *Fairfield Sentry Ltd. v. HSBC Sec. Servs. (Lux.) S.A.*, No. 21 Civ. 10316 (LAP), 2022 WL 3910679, at *7 (S.D.N.Y. Aug. 31, 2022) (cleaned up). A pure question of law is "controlling" when "reversal of the [trial] court's order 'would terminate the action, or at a minimum that determination of the issue on appeal would materially affect the litigation's outcome.'" *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (quoting *In re Enron Corp.*, No. 06 Civ. 7828 (SAS), 2007 WL 2780394, at *1 (S.D.N.Y. Sept. 24, 2007)).

Under the second prong, there exists "substantial ground for disagreement" over a controlling question of law when "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *In re Enron Corp.*, 2007 WL 2780394, at *1. However, the "mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996). The reviewing court instead must "analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is *substantial* ground for dispute." *Id.*

Under the third prong, which is "closely connected" to the first, *In re 650 Fifth Ave.*, No. 08 Civ. 10934 (RJH), 2012 WL 363118, at *2 (S.D.N.Y. Feb. 2, 2012), "[a]n immediate appeal is considered to advance the ultimate termination of the litigation if that 'appeal promises to advance the time for trial or shorten the time required for trial,'" *Transport Workers Union of America v. N.Y.C. Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005) (quoting *In re Oxford Health Plans, Inc.*, 182 F.R.D. 51, 53 (S.D.N.Y. 1998)).

Even where all three prongs are met, courts must exercise discretion to grant leave to appeal "only in exceptional circumstances that overcome the general aversion to piecemeal litigation and justify departing from the basic policy of postponing appellate review until after the entry of a final judgment." *Picard v. Estate of Madoff*, 464 B.R. 578, 582 (S.D.N.Y. 2011) (quoting *In re BLMIS*, No. 11 Misc. 0012 (KMW), 2011 WL 3897970, at *3 (S.D.N.Y. Aug. 31, 2011)).

## III.    Discussion

Far from satisfying all required standards, Tensyr has not established any of the Section 1292(b) factors. The Bankruptcy Court's decision does not present a controlling question of law; even it did, there would not be substantial ground for disagreement as to the questions Tensyr raises; and resolution of those questions would not materially advance the ultimate termination of the litigation below. The Court therefore denies Tensyr's motion.

### A.    Controlling Question of Law

Tensyr identifies two "questions presented" by the Bankruptcy Court's ruling on personal jurisdiction that it contends introduce controlling questions of law warranting interlocutory review. First:

> In a recovery action pursuant to 11 U.S.C. § 550(a)(2), has the Trustee discharged his burden to make a prima facie showing of personal jurisdiction over a foreign subsequent-transferee defendant when the Trustee cannot show that his claim

"arises out of or relates to" the defendant's alleged contacts with the United States because the transfer the defendant received originated from a foreign initial transferee and did not originate from a debtor in the United States?

Tensyr Mot. at 11.  And second:

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, may the Bankruptcy Court assume as true a plaintiff's jurisdictional allegations when they have been rebutted by unchallenged evidence?

*Id.*  Neither question is actually raised by the decision below—and Tensyr's appeal does not implicate a pure question of law justifying interlocutory appellate review.

A pure question of law entails an inquiry that "the reviewing court could decide quickly and cleanly without having to study the record." *In re Lehman Bros. Holdings. Inc.*, No. 18 Civ. 8986 (VEC), 2019 WL 2023723 at *3 (S.D.N.Y. May 8, 2019).  The existence of personal jurisdiction, in contrast, typically presents "a fact-sensitive inquiry dependent on the particulars of the case before the court." *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 240 (S.D.N.Y. 2010).  For this reason, courts have often denied motions for leave to appeal interlocutory orders denying motions to dismiss under Rule 12(b)(2).  *See, e.g.*, *In BLMIS*, 2023 WL 395255, at *3 (denying motion for leave to appeal from denial of motion to dismiss for lack of personal jurisdiction, and collecting cases doing same); *Goldfarb v. Channel One Russia*, No. 18 Civ. 8128 (JPC), 2021 WL 1392850, at *10 (S.D.N.Y. Apr. 13, 2021) (denying leave to file interlocutory appeal of decision denying motion to dismiss for lack of personal jurisdiction); *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 866 (2d Cir. 1996) ("[S]ince the exercise of personal jurisdiction over a foreign parent corporation through a resident subsidiary is a question of law which turns on a thorough examinations of the facts defining the relationship between the two corporations, we are reluctant to rely on what may turn out to be an incomplete record to clarify legal doctrine for the district court's guidance.").

The two questions pertaining to personal jurisdiction that Tensyr identifies here are similarly fact dependent.

***Tensyr's first question***: Tensyr's first question is clumsily worded, but Tensyr's brief clarifies that it means to challenge whether the Trustee can make out a *prima facie* showing of personal jurisdiction based on Tensyr's transactions with Fairfield Sentry, given that "Tensyr showed that the transfers allegedly received by Tensyr from Sentry are so attenuated from the transfers Sentry received from BLMIS, that it is impossible for Tensyr's funds to have originated from BLMIS." Tensyr Mot. at 14. For multiple reasons, that question is problematic as a purported controlling question of law.

For one, it starts with a factually disputed premise: that "Tensyr showed . . . that it is impossible for Tensyr's funds to have originated from BLMIS." *Id.* The Bankruptcy Court did not make any such finding. It instead concluded that, at the pleading stage, the "Trustee need only assert allegations that make it seem plausible that Defendants received BLMIS monies," and found the Trustee to have done so. Bankruptcy Op. at 31–32. It specifically declined, at this stage, to undertake the tracing exercise implicitly required by Tensyr's first question, given that query's factual premise that it has been conclusively established that Tensyr did not receive any BLMIS customer property. *See id.* at 32 ("Undoubtedly, the Court will trace and calculate how Fairfield Sentry spent its BLMIS (and any non-BLMIS) funds at a later stage of litigation."); *see also id.* at 33–34 ("The calculation of Fairfield Sentry's customer property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation.").

Further, although Tensyr seeks review of the denial of the motion to dismiss challenging personal jurisdiction, that decision did not rest on whether Tensyr had received BLMIS customer

property. In finding a *prima facie* case of personal jurisdiction, the Bankruptcy Court relied on other minimum contacts pled between Tensyr and this forum. These centrally included Tensyr's having invested in Fairfield Sentry while "knowing and intending that their investments would be investments with New York-based BLMIS." Bankruptcy Op. at 6. It was in connection with Tensyr's separate motion under Rule 12(b)(6), which unsuccessfully sought to dismiss the Trustee's subsequent transfer claim, that the Court addressed the adequacy of the Trustee's pleadings to the effect that Tensyr had received BLMIS customer property. *Id.* at 31–34.

In sum, Tensyr's first question presented is fatally flawed as a candidate for interlocutory review. On one reading, it is hypothetical, and hence not controlling, in that the Bankruptcy Court's decision did not raise or turn on whether there can be personal jurisdiction if Tensyr did not receive BLMIS customer property. *See, e.g.*, *Bishop v. Best Buy, Co. Inc.*, No. 08 Civ. 8427 (LBS), 2011 WL 4011449, at *13 (S.D.N.Y. Sept. 8, 2011) (party cannot create a pure question of law by "turning [the factual issues] into hypotheticals" reliant on conclusions not found by deciding court); *In re BLMIS*, 2023 WL 395225, at *2 (question presented was "arguably a pure question of law but [] not controlling because it is hypothetical" as Bankruptcy Court did not resolve that question). On another reading, it is densely fact-specific, and hence not a pure question of law, in that it asks this Court to determine factually that Tensyr did not receive customer property. *See, e.g.*, *McGraw-Hill Global Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 400 (S.D.N.Y. 2018) ("[W]hether the pleadings, affidavits, and supporting materials support a finding of jurisdiction is 'not a question of law at all.'" (quoting *Hecklerco, LLC v. YuuZoo Corp.*, 258 F. Supp. 3d 350, 357 (S.D.N.Y. 2017))); *Flores v. National Football League*, No. 22 Civ. 0871 (VEC), 2024 WL 50238 (S.D.N.Y. Jan. 4, 2024) (no controlling question of law when resolution of question would require reviewing court to "pore over the

9

factual circumstances"). Either way, the proposed question fails the first prong of the test for interlocutory review.

***Tensyr's second question***: This question presented is superficially pitched at a more abstract level: whether, on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the Bankruptcy Court may assume as true a plaintiff's jurisdictional allegations when they have been rebutted by unchallenged evidence. But, as a candidate for interlocutory review, it ultimately embeds the same flaws as Tensyr's first proposed question. As Tensyr's briefing reveals, the purportedly unchallenged evidence rebutting the Trustee's jurisdictional allegations comes from Tensyr's submissions in support of dismissal. These, Tensyr contends, "showed that it was mathematically impossible (based on the Trustee's *own allegations* regarding transfers received by defendants in other BLMIS cases) that all the Sentry transfers received by Tensyr originated from BLMIS." Tensyr Mot. at 20. But, for the reasons reviewed above, the Bankruptcy Court's finding of jurisdiction did *not* rely on the Trustee's allegations that Tensyr had received customer property. Answering the question posed by Tensyr thus would not resolve the present motion. Moreover, were this Court to engage with that question, the ensuing inquiry would be record- and fact-dependent. Specifically, it would call upon the Court, on a close review of Tensyr's voluminous submissions, to determine whether these conclusively show a lack of receipt by Tensyr of BLMIS customer funds. This inquiry would not, to say the least, resolve a pure question of law.

Tensyr's questions presented thus are not controlling questions of law well-suited for interlocutory review.

### B.    Substantial Ground for Difference of Opinion

Tensyr has also not demonstrated any substantial grounds for difference of opinion with respect to either question it poses, within the meaning of Section 1292(b).

As to Tensyr's first proposed question, it poses whether a *prima facie* case for personal jurisdiction has been made where the transfers at issue have been shown to have originated from a foreign initial transferee and not a U.S. debtor. Tensyr Mot. at 14. As discussed above, that question was not the basis on which the Bankruptcy Court sustained the Trustee's pleadings as to personal jurisdiction. That does not qualify as a question of "first impression" or as a question of "particular[] difficulty" within the meaning of Section 1292(b), *see In re Flor*, 79 F.3d at 284; *Picard*, 464 B.R. at 582 (quoting *In re Enron Corp.*, No. 01 Civ. 16034 (SAS), 2006 WL 2548592, at *4 (S.D.N.Y. Sept. 5, 2006)), so much as it asks about a familiar standard applied to hypothetical facts that Tensyr wishes had been the basis of the Bankruptcy Court's ruling. In fact, as noted, the Bankruptcy Court, in finding minimum contacts, relied on Tensyr's allegedly intentional direction of funds to BLMIS via Fairfield Sentry—conduct it found to satisfy governing Supreme Court precedent. *See* Bankruptcy Op. at 10–11. Tensyr cannot create a substantial question of first impression by reconceiving the Bankruptcy Court's analysis as incorrectly resolving a different question than the question which that court addressed in finding personal jurisdiction. *Cf. In re Anderson*, 550 B.R. 228, 238 (S.D.N.Y. 2016) (assertion that lower court was incorrect "not enough" to show substantial ground for disagreement).

Contrary to Tensyr's argument, *PIFSS* does not require interlocutory review here. Tensyr casts *PIFSS* as having "involved materially identical facts, and [having] reached a diametrically opposite result from the Bankruptcy Court's ruling [here]." Tensyr Mot. at 17. But *PIFSS* is not inconsistent with the determination here. For one, the underlying facts of the two cases (both involving BLMIS feeder funds) are not "materially identical." In *PIFSS*, Judge Woods found determinative that, on the record before him, it could not be shown that PIFSS's redemption request to Sentry had triggered a transfer from BLMIS to Sentry, and yet such a transfer was

needed to show a "direct effect" under the FSIA standard.  *See PIFSS*, 2023 WL 6143985, at *3–4, *6–7.  Here, however, Tensyr argues that, based on the Trustee's pleadings in this and other cases, it could not have received customer property from BLMIS via Sentry because Sentry allegedly transferred all of its BLMIS-originating funds before the transfers at issue to Tensyr. *See* Tensyr Mot. at 6–7.  Even adopting Tensyr's presentation of the decisive question, this case would turn on a tracing exercise to reveal whether the transfers Tensyr received contained BLMIS property.  Tensyr Mot. at 6–7.  But *PIFSS*, in applying the direct effects test, was concerned with a different issue: whether a redemption request to Fairfield Sentry by the subsequent transferee triggered a transfer from BLMIS to Sentry.  *PIFSS*, 2023 WL 6143985, at *6–7.  The facts here and in *PIFSS* are thus not "materially identical" in the first place.

In any event, the Bankruptcy Court's decision here addressed a different issue than did *PIFSS*, such that the cases' outcomes cannot be fairly termed "diametrically opposite."  Tensyr Mot. at 17.  At issue in *PIFSS* was a claim that *subject matter jurisdiction* was lacking under the FSIA, on the grounds that the defendant enjoyed sovereign immunity.  Judge Woods rejected the Trustee's argument that the statutory commercial activity exception to sovereign immunity under the FSIA applied.  He therefore reversed the Bankruptcy Court's decision denying a motion to dismiss based on an asserted lack of subject matter jurisdiction.  In the pertinent part of his analysis, Judge Woods found the "direct effects" element of the statutory exception, in which an act outside the United States must have had a "direct effect" within the United States, did not apply.  *See PIFSS*, 2023 WL 6143985, at *1.  The Bankruptcy Court ruling at issue here, however, does not implicate subject matter jurisdiction at all, let alone the application of a statutory exception in the FSIA.  At issue instead is whether the Trustee has pled a *prima facie* case of *personal jurisdiction* consistent with due process.

As courts have recognized, the FSIA's direct effects exception and the test for personal

jurisdiction doctrine address related concepts and can yield parallel results. *See Rein*, 162 F.3d at

759. But they are not necessarily coterminous. *See, e.g.*, *Republic of Argentina v. Weltover,*

*Inc.*, 504 U.S. 607, 619 n.2 (1992) (in FSIA case applying direct effects test, the issue whether

"there [was] a constitutional basis for personal jurisdiction over [Argentina was] not before the

Court as an independent question." (internal citation omitted)); *Mar. Int'l Nominees*

*Establishment v. Republic of Guinea*, 693 F.2d 1094, 1105 n.18 (D.C. Cir. 1982) ("[T]he

immunity determination involves considerations distinct from the issue of personal jurisdiction,

and the FSIA's interlocking provisions are most profitably analyzed when these distinctions are

kept in mind."); *Drexel Burnham Lambert Grp. Inc. v. Comm. of Receivers for A.W. Galadari*,

810 F. Supp. 1375, 1388 (S.D.N.Y. 1993), *rev'd on other grounds*, 12 F.3d 317 (2d Cir. 1993)

("Personal jurisdiction under the FSIA is a matter separate and apart from the issue of subject

matter jurisdiction. "); *see also Walpex Trading Co. v. Yacimientos Petroliferos Fiscales*

*Bolivianos*, 712 F. Supp. 383, 390 (S.D.N.Y. 1989) ("Personal jurisdiction over foreign

sovereign instrumentalities under the FSIA involves a scrutiny distinct from the subject matter

jurisdiction inquiry . . . ."). Indeed, in *PIFSS* itself, Judge Woods had distinguished at the

threshold between the inquiries, granting PIFSS leave to appeal the Bankruptcy Court's finding

of subject matter jurisdiction question while denying it leave to appeal the same Court's finding

of personal jurisdiction. *See PIFSS*, 2023 WL 3293648, at *3–8.

     As to Tensyr's second question presented, it too, properly construed, does not present a

question of first impression. Tensyr formulates the question at a high level of abstraction: in

effect, whether a Bankruptcy Court can assume a plaintiff's jurisdictional allegations when these

have been conclusively rebutted. But as noted, the factual premise underlying this formulation

has not by any means been established.  Properly understood, the question is more prosaic and fact-bound: whether the Bankruptcy Court, presented with Tensyr's contrary pleadings, erred at the motion to dismiss stage by declining to engage in the complex tracing exercise that Tensyr's submission contemplated, and instead crediting the allegations pled by the Trustee.  *See Tensyr Mot.* at 19–21; *see also* Bankruptcy Op. at 10, 31.  Tensyr faults the Bankruptcy Court for not following the lead of courts that have allegedly engaged in a thoroughgoing evidentiary review at the pleadings stage, *see* Tensyr Mot. at 21 (citations omitted), but as the Trustee notes, Tensyr's case authority was distinguishable, including on account of factual averments specific to Tensyr, *see* Trustee Opp. at 22–23 & n.9.  And the Second Circuit has explicitly held that, in the absence of an evidentiary hearing as to personal jurisdiction, the trial court's sole appropriate inquiry is "evaluating[] whether [the plaintiff] ha[s], through its pleadings and affidavits, made a *prima facie* showing of personal jurisdiction '*notwithstanding any controverting presentation*'" by the defendant.  *Dorchester*, 722 F.3d at 86 (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) (emphasis added)).  In all events, Tensyr's second question does not present one as to which there is a demonstrated *substantial* disagreement among courts so as to favor interlocutory review.

### C.    Likelihood of Materially Advancing Termination of Litigation

Finally, granting interlocutory review would not materially advance the termination of the litigation.  This third prong, as noted, is "closely connected" to the first inquiry into whether the questions presented are "controlling."  *See Sentry*, 2022 WL 3910679, at *5, *7.

For much the same reasons reviewed above, resolution of the questions presented would not materially advance this litigation, if at all.  Tensyr's abstractly formulated questions are at a considerable remove from the Bankruptcy Court's fact-specific holdings and reasoning.  Were this Court to answer those questions as presented, the answers would be highly unlikely to alter

the course of the litigation in the Bankruptcy Court. And were this Court to review *de novo* the factual materials adduced to date to resolve the question on which Tensyr focuses—whether it received any transfers of BLMIS customer property—that, too, would be unlikely to alter the litigation's course. That issue was not the basis of the Bankruptcy Court's personal jurisdiction finding. And there is every reason to expect that the Bankruptcy Court would adhere to its permissible decision to defer addressing that question until after discovery. *Cf.* Bankruptcy Op. at 31 (discussing tracing customer property between BLMIS, Fairfield Sentry, and Tensyr in the context of the 12(b)(6) motion to dismiss). There is thus little likelihood that an interlocutory appeal would speed up this litigation. It is more likely to slow it down.

> ### D.    No Exceptional Circumstances Warranting Interlocutory Review

Even if Tensyr had carried its burden under Section 1292(b)—and it has not as to any of the three prongs—the Court would still be unlikely to grant interlocutory review, because this case does not present exceptional circumstances warranting such intervention. *See Picard*, 464 B.R. at 582. The Bankruptcy Court has not, to this point, made a definitive holding on personal jurisdiction. It has merely found that the Trustee has pled a *prima facie* case, leaving open the possibility of a different resolution on a fuller record. Bankruptcy Op. at 12. "[B]ecause further proceedings in the Bankruptcy Court could materially alter the jurisdictional inquiry, this case does not present 'exceptional circumstances that overcome the general aversion to piecemeal litigation,'" *PIFSS*, 2023 WL 3293648, at *7 (quoting *Picard*, 464 B.R. at 582–83). "[T]o the contrary, the concern that underlies that general aversion—that doing so would yield repeated appeals before final judgment—counsels against immediate appeal of the personal-jurisdiction issue[.]" *Id.*

## CONCLUSION

For the foregoing reasons, the Court denies Tensyr's motion for leave to appeal in its entirety.  The Clerk of Court is respectfully directed to terminate all outstanding motions and close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: March 25, 2024
New York, New York